

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 28, 2007**                                      **United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT WARREN PAIGE, | § | CASE NO. 04-20147-RLJ-7 |
| | § | |
| DEBTOR | § | |

## MEMORANDUM OPINION

The Court considers the motion of Kent Ries ("Ries"), the chapter 7 trustee, requesting

that the Court sanction the debtor, Robert Paige ("Paige"), for his unauthorized taking and selling

of four classic cars.[1]

---

[1]Ries's motion, titled "Motion to Compel Debtor to Turnover or Alternatively to Approve Unauthorized Sale and to Sanction Debtor," also requested, as indicated by the title, that Paige be directed to turnover the four classic cars. Upon agreement by the parties and upon their motion, the Court issued its order, entered on December 15, 2006, approving the sale of the four cars with the proceeds, $648,500, remitted to the trustee for the benefit of the bankruptcy estate. The remaining issue, therefore, is whether Paige should be sanctioned for selling the four cars without the trustee's knowledge or consent.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### Background Facts

Paige filed this chapter 7 case on February 6, 2004. Ries is the appointed chapter 7 trustee charged with the responsibility of administering the assets in Paige's bankruptcy estate. Paige is a medical doctor; in 2004, he was paid $869,810 from his professional association.

This case has spawned several lawsuits and other contested matters, including an objection to certain of Paige's exemptions, which was converted to an adversary proceeding; an adversary complaint by the trustee seeking to recover certain alleged fraudulent transfers; and a declaratory judgment action initiated by LaDon Paige, Paige's wife, to which the trustee filed a counterclaim. Following the trial of the exemption adversary on November 15, 2005, the principal parties involved in the various disputes began discussing a global settlement. The parties involved in such negotiations were Ries, as bankruptcy trustee representing the interests of the bankruptcy estate, Paige, and Paige's non-filing spouse, LaDon Paige. Settlement discussions culminated in a settlement conference held on December 14, 2005, at which time the terms of a global settlement were agreed upon.[2]

---

[2]The actual parties to the Settlement and Mutual Release Agreement are Dr. Robert Warren Paige, LaDon Carper Paige, Robert W. Paige, LaDon Carper Paige and Glenda J. Carper, as Co-Trustees of the Robert Clayton Paige Trust #1992 and the William Clarke Carper Paige Trust #1992 under a trust indenture dated May 4, 1992, Bobladon, Ltd. d/b/a Catco and Maverick Enterprises, Bobladon Management, L.L.C., Blessen Road Investments, L.L.C., Robert Warren Paige, M.D., P.A., Paige Real Estate Investments, L.P., Riders-in-the-Sky, Inc., and chapter 7 trustee, Kent David Ries, in his capacity as chapter 7 trustee and on behalf of the bankruptcy estate of Robert W. Paige.

Following the settlement conference, the parties began working on a formal settlement agreement and their due diligence related to same. By the settlement, the Paiges desired to resolve the various exemption issues, the fraudulent transfer suit relating to their children's trusts, the suit regarding LaDon Paige's separate property which, in turn, related to a post-nuptial agreement with Paige and issues regarding Paige's professional association. The estate, via the trustee Ries, desired to recover assets, either cash or property, for use in making distributions to creditors. A key aspect of the settlement from the estate's perspective was LaDon Paige's agreement to waive any claim to an entity, Bobladon, Ltd., in exchange for the estate waiving any community property interest to certain personal property that she claimed as her separate property. Bobladon, Ltd. did business under at least two other names, one, "Catco," which held several classic cars and motorcycles; and the other, "Paige Real Estate," which owned a storage building for Catco for use in storing the classic automobiles and motorcycles. It also owned six duplexes and a rental house. The issue of whether Paige, at the time of the bankruptcy filing, owned a one-half undivided interest in Bobladon, Ltd. or the entirety of the interest in Bobladon, Ltd. was resolved by the settlement with the bankruptcy estate receiving the entire interest in Bobladon, Ltd.

The parties signed the settlement agreement on June 7, 2006. The Court approved the settlement by its order entered on July 12, 2006, on Ries's motion seeking approval of the compromise. The parties closed the deal on August 10, 2006. As part of the settlement, eleven of the thirty classic vehicles and motorcycles owned by Bobladon, Ltd. were sold back to Paige for $854,538.03, which was the stated "book value" for the vehicles. Bobladon, Ltd., and thus the bankruptcy estate, retained the remaining nineteen vehicles. The settlement agreement

specifically provides that the estate's ownership of Bobladon, Ltd. was effective as of February 6, 2004, the petition date.

The parties and their respective counsel attended the August 10, 2006 closing of the settlement agreement, along with representatives from Amarillo National Bank, FirstBank Southwest, and Dudley Stanley, a creditor of Paige. The documents were signed and the parties ostensibly worked out the logistics for having titles to the various vehicles transferred to reflect the agreement. Specifically, each title was reviewed and physically transferred to either the bankruptcy estate or Amarillo National Bank (for the debtor). Two titles were missing and Paige promised to deliver the missing two titles to the trustee. In addition, at the August 10, 2006 closing, the actual location of each car to be retained by Bobladon, Ltd. was supposedly verified by Paige. The "verified" locations for the cars to be retained by Bobladon, Ltd. were consistent with an inspection by Ries on February 6, 2006.

A few weeks prior to the closing, Paige called Ries to inquire about purchasing additional vehicles from the bankruptcy estate. Ries told Paige that such a sale was possible, but would have to take place after the closing of the settlement and upon notice in accordance with bankruptcy procedures. Ries also told Paige that his acceptance of any proposal would depend solely on whether any such sale was in the estate's best interest. On July 27, 2006, Paige submitted an offer to purchase seven of the nineteen vehicles that were to be retained by Bobladon, Ltd. under the settlement agreement. At the August 10, 2006 closing, however, Paige told the trustee that he was no longer interested in purchasing the seven vehicles, but indicated another offer may be forthcoming. Ries told Paige that he would consider any offers, but that the

- 4 -

estate's auctioneer, Assiter & Associates, would be handling all sales negotiations concerning the vehicles.

Immediately after the August 10, 2006 closing, Ries began plans to liquidate the Bobladon, Ltd. assets. He hired real estate brokers to sell the Paige real estate properties and began negotiations with Barrett-Jackson Auction Company of Scottsdale, Arizona, with which the estate's main auctioneer, Assiter & Associates, had an affiliation. Barrett-Jackson is a leading auctioneer of classic vehicles. The trustee obtained an offer from Barrett-Jackson regarding the rate of commission, and other expenses, along with an agreement to highlight the vehicles held by Bobladon, Ltd. at a scheduled January 2007 Barrett-Jackson auction. On or about September, 2006, Ries learned from his auctioneer that four of the nineteen cars were missing. At this same time, specifically on September 14, 2006, Paige submitted to Ries a handwritten fax offer to purchase the missing four cars. Over the next few weeks, the trustee's auctioneer was able to locate the four cars and learned that they had been moved to a Canadian auction house previously used by Paige, RM Auctions, Inc. The trustee then learned that the four missing cars had been sold by Paige through RM Auctions on August 5, 2006, at the Meadow Brook Hall in Rochester, Michigan. The sale took place, therefore, one week prior to the closing of the global settlement agreement. Paige's removal and sale of the four cars was not authorized by or known to the trustee. The total gross sales price received at the sale through RM Auctions, Inc. for the four cars was $648,500. By agreement between the trustee on the one hand and RM Auctions, Inc. and Paige on the other hand, and approved by this Court, the $648,500 was turned over to the trustee and the titles delivered to the purchasers at the RM Auction, Inc. auction.

The offer made by Paige for the seven cars on July 27, 2006, included the four missing cars at an aggregate price for the four cars of $565,000, the so-called "book value" for the four cars. His subsequent offer for the four cars, on September 14, 2006, after Ries learned the cars were missing, was $657,000.

At the hearing on the motion for sanctions, Paige was called as an adverse witness by the trustee, but, in response to all questions, he asserted his Fifth Amendment privilege and refused to testify.

## Discussion

The issue before the Court is whether the Court can and should sanction Paige for his conduct in taking and selling the four cars without the trustee's, Ries', consent or knowledge, and, in fact, before he had entered into the settlement agreement with the trustee. Ries contends that Paige's actions "were unconscionable, lacked any resemblance of the good faith required by the settlement agreement he signed with the Estate, and are in direct violation of his statutory duties under Bankruptcy Code § 521." Severe sanctions are justified, according to Ries, because Paige's actions were taken in an attempt to profit himself at the estate's expense and are consistent with Paige's conduct throughout the case that has resulted in "generally meritless litigation at every turn."

Ries requests that the Court issue a monetary sanction and, in assessing an amount of such sanction, use a multiple of $126,500, which is the difference between $775,000, the high end projected value of the four cars, and $648,500, the amount for which the cars sold. Ries contends that the estate is out the attorney's fees and costs incurred in recovering the four cars (or their proceeds), and has been otherwise damaged in an indeterminate amount by Paige's conduct,

including the cost to the estate from Ries being diverted from other matters in the case, the loss in value to the entire vehicle inventory caused by the delay of the proposed estate's sale, and a loss of value in the remaining vehicles from a lack of "star power" represented by the four sold cars. Ries submits that the egregious nature of Paige's conduct, as well as the indeterminate amount of certain of the losses and damages to the estate, justify the use of a multiplier. Ries's motion also requests imposition of a constructive trust against assets retained by Paige as a means to secure "any damage award assessed by [the] Court."

Paige admits that he had no authority to sell the four cars and that he did so without the trustee's knowledge or consent. He argues, however, that given that the estate ultimately recovered the $648,500, which Paige submits is a good value for the four cars, the estate has not been damaged. Paige has offered to pay the trustee's reasonable and actual attorney's fees and costs incurred in dealing with the matter. Apart from his offer to pay the trustee's attorney's fees and costs, Paige argues that the Court does not have authority to issue a sanction against him. Paige contends that the trustee's claim for sanctions is an attempt to recover damages arising from potential substantive causes of action and that the Court cannot essentially short-circuit the due process requirements of a full blown lawsuit. Paige also raises defenses he has to the trustee's claims and potential causes of action to further underscore his position. For example, Paige points out that the four cars are assets of Bobladon, Ltd. and not the bankruptcy estate; the estate, therefore, holds the ownership interests of Bobladon, Ltd. and Bobladon, Ltd. potentially has a claim against Paige, not the trustee on behalf of the estate. Paige took nothing from the estate, it is argued. Next, Paige submits that he did not violate any promise he made under the settlement agreement because, under the precise terms of the settlement agreement, he warranted

- 7 -

Bobladon's inventory of cars as existed on November 30, 2005, which inventory included the four cars and was, as of that date, accurate. Paige argues that the trustee's use of $775,000 as part of a damage formula is invalid because such amount represents an estimate only, and a high-end estimate at that, and the actual amount obtained, the $648,500, is fair and reasonable and a product of a duly held and advertised auction. Paige disputes the logic of the trustee's contention that the estate was damaged by Paige robbing the estate of the opportunity to sell the four cars with the other inventory of cars thereby decreasing the value of the remaining inventory. Just because a sale is bigger does not make it better, Paige argues. Paige states that there is no evidence indicating that he intended to keep the proceeds. Finally, Paige submits that contempt cannot constitute a basis for sanctions as no court order is at issue.

## Section 105 of the Bankruptcy Code

The Court agrees with Paige to the extent that he argues that the Court should not base either its authority to sanction or the amount of a sanction on potential substantive causes of action held by the trustee. The Court is of the opinion, however, that sanctions are appropriate in this case and that it need not resort to substantive causes of action to justify a sanction against Paige. Section 105 of the Bankruptcy Code allows the bankruptcy court to issue any order that is "necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Consistent with the Supreme Court's decision in *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991) (recognizing district courts' inherent power to sanction), a bankruptcy court's authority under section 105 comports with its inherent power to sanction. *See, generally*, *Conner v. Travis County*, 209 F.3d 794 (5th Cir. 2000); *see, e.g.*, *In re Rainbow Magazine, Inc*., 77 F.3d 278, 283-84 (9th Cir. 1996) ("There can be little doubt that bankruptcy courts have the inherent power to

sanction vexatious conduct presented before the court. The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts." (citing § 105(a))); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (§ 105 gives bankruptcy courts broad power to implement provisions of bankruptcy code and to prevent abuse of bankruptcy process, which includes power to sanction for abuses of process (cited case omitted)).

The Fifth Circuit has recognized the bankruptcy court's inherent power to sanction and has enumerated some basic requirements. "The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith. We have reversed sanctions awards when . . . the district court merely made general complaints about the sanctioned party." *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). Continuing, the court elaborated

> [m]oreover, the standard for the imposition of sanctions using the court's inherent powers is extremely high. The court must find that the "very temple of justice has been defiled" by the sanctioned party's conduct. . . . We find that the imposition of sanctions using the court's inherent powers when no bad faith is specifically found and the record does not support the required high level of culpability constitutes an abuse of discretion.

*Id*. at 722-3. In another case, the Fifth Circuit explained the need for restraint and caution when assessing sanctions and described its approach on review.

> We review a district court's imposition of sanctions under its inherent power for abuse of discretion. Nonetheless, the threshold for the use of inherent power sanctions is high. The inherent power is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function. Perhaps for this reason, we have repeatedly emphasized that, where the inherent power is involved, our review is not perfunctory. As the Supreme Court has explained, '[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.'

*Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (internal quotations and citations omitted).

## Paige's Duties Under Section 521 of the Bankruptcy Code

Paige, as with any debtor, has certain duties imposed by the Bankruptcy Code. These include the duties set forth at section 521(a)(3) and (a)(4) of the Bankruptcy Code. These provisions state as follows:

> (a)  The debtor *shall*–
>
> . . .
>
>> (3) if a trustee is serving in the case . . ., *cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties* under this title;
>>
>> (4) if a trustee is serving in the case . . ., *surrender to the trustee all property of the estate* and any recorded information, including books, documents, records, and papers, relating to property of the estate ...;

A debtor may be sanctioned for failing to cooperate with the trustee, an obligation that encompasses surrender of estate assets, as required under the Bankruptcy Code. *In re Cochener*, 2007 WL 460910 (Bankr. S.D. 2007) (The debtor and the debtor's son were sanctioned for failing to appear at the 341 meeting, refusing to cooperate with the trustee, and for allowing estate property to be damaged resulting in extensive losses to its value.). As the bankruptcy court said in *In re Stinson*, 269 B.R. 172 (Bankr. S.D. Ohio 2001),

> [a] chapter 7 debtor has an affirmative duty to cooperate with the case trustee in the administration of the bankruptcy estate. This includes a duty to surrender to the trustee all property of the estate. . . . Where a debtor fails to cooperate with the case trustee, the trustee is then forced to expend estate resources in pursuing the debtor's cooperation, which results in the reduction of the distribution to creditors.

*Id*. at 176 (internal citations omitted).

## Paige's Conduct

Paige knows, and has always known, that he held an interest in Bobladon, Ltd. at the time he filed his bankruptcy case. He knew exactly what cars Bobladon, Ltd. owned, both at the time

of the filing of the case and at the time he entered into the settlement agreement. Paige wrongfully took and sold the four cars without the trustee's consent. His offers to purchase the four cars from the trustee reflect an intent to both conceal the sale from the trustee and to profit himself from the sale. Paige's conduct constitutes a failure to cooperate with the trustee and to account to the trustee regarding estate property. His conduct violates his duties under sections 521(a)(3) and (a)(4). That the cars are owned by Bobladon, Ltd., which itself is the estate asset rather than the cars, does not excuse Paige. The four cars constituted major assets of Bobladon, Ltd. and therefore dramatically affected its value. It is disingenuous to argue the distinction. Paige's conduct was intentional, deceitful, and done in bad faith and falls squarely within the Court's purview and power under section 105 of the Bankruptcy Code.

### The Amount of the Sanction

The Court now turns to the amount of the sanction. The District Court for the Northern District of Texas reviewed monetary sanctions imposed under rule 9011 for a bad faith filing and referenced the Fifth Circuit's view on monetary sanctions.

> . . . [W]hile monetary sanctions may be appropriate, the Fifth Circuit Court of Appeals has continuously stated that "the basic principle governing the choice of sanction is that the least severe sanction adequate to serve the purpose should be imposed." The range of "appropriate" sanctions is far-reaching and may include "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances."

*Midwest Properties No. Two v. Big Hill Inv. Co., Inc.*, 93 B.R. 357, 361 (N.D. Tex. 1988) (citing

*Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 883 (5th Cir. 1988) (en banc)).

Attorney's fees incurred because of a party's bad faith behavior might also reasonably be assessed. While sanctioning Bank of New York, the Eleventh Circuit noted "[u]nder appropriate

- 11 -

circumstances, it is within a court's discretion to assess attorney's fees on a party, or even to dismiss its lawsuit, for actions taken in bad faith." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006). The Fifth Circuit has recently affirmed a decision by the District Court for the Northern District of Texas that considered the defendants' reasonable litigation expenses and attorney's fees and used them as a measure of sanctions awarded under Rule 11. In *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006), the Circuit court stated, "[t]he district court's calculation of reasonable fees and expenses was not clearly erroneous. The court conducted the lodestar analysis by multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers." The Supreme Court has also approved an award of attorney's fees even when the court relies on its discretionary inherent powers. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), the Court stated

> [a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in *Roadway Express*, outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.

(internal citation omitted). There the Court affirmed an assessment of the opposing party's entire attorney's fee as a sanction for bad faith conduct.

Paige is a medical doctor who draws a substantial annual income. The Court naturally assumes he has a significant level of sophistication, which serves to underscore the egregious nature of his conduct. The Court is of the opinion and concludes that a sanction in the amount of $80,000 is the minimum amount required to deter similar conduct on Paige's part in the future.

## Conclusion

- 12 -

In assessing the sanction here, the Court is mindful of the Fifth Circuit's caveat in *United States v. Sutton*, where the court stated that section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." 786 F.2d 1305, 1308 (5th Cir. 1986). The sanction here is derived from the Court's inherent power to sanction and serves as a means to ensure that Paige satisfies his obligations and duties under the Bankruptcy Code, specifically his obligation to cooperate with the trustee's efforts to administer estate assets. This case has gone on much too long; it is imperative that the trustee wrap-up his administration of this case. To accomplish this, it is likewise imperative that Paige cooperate fully with the trustee. The amount of the sanction is, in the Court's judgment, the minimum amount necessary to cover both the additional fees and expenses incurred by the trustee in recovering the proceeds from the four cars and to deter similar conduct by Paige for the balance of the trustee's administration of this case.

The Court denies the request for a constructive trust, but does so without prejudice to a claim for constructive trust made in a formal adversary proceeding. The sanction shall be made payable to Kent Ries, the chapter 7 trustee, and shall be distributed to the estate's creditors in accordance with the priorities established by the Bankruptcy Code.

### End of Memorandum Opinion ###